UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLAGSTAR BANK, FSB, a
Federally Chartered Savings Bank,

      Plaintiff,                                        Case No. 2:13-cv-12136
                                                          Honorable Victoria A. Roberts

v.

GULFSTREAM BUSINESS BANK, INC.,
A Florida corporation,

      Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO CHANGE VENUE AND REQUEST FOR A MORE DEFINITE STATEMENT**

**I.    BACKGROUND AND PROCEDURAL HISTORY**

This matter is before the Court on Defendant Gulfstream's motion for change of venue and for a more definite statement (Doc. #3). The motion is fully briefed.

Gulfstream Business Bank, Inc. ("Gulfstream") entered into a Wholesale Lending Broker Agreement ("Broker Agreement") with Flagstar Bank, FSB ("Flagstar"). Flagstar filed a complaint with the Oakland County Circuit Court against Gulfstream, asserting breach of contract (Count 1) and unjust enrichment (Count 2). Gulfstream removed the case to this Court.

Gulfstream now seeks transfer of the case to the Southern District of Florida Fort Pierce Division pursuant to 28 U.S.C. §1404(a). Flagstar says that removal is not appropriate because of a forum selection clause in Section 7.3 of the Broker Agreement, which states that the parties "irrevocably" submit to personal jurisdiction in a specifically named state and federal court in

Michigan, and to Michigan law, for any action, suit or proceeding arising under the Broker Agreement.

Because Gulfstream has not met its burden to demonstrate by a preponderance of the evidence that convenience and the interest of justice favors transfer, its motion to transfer venue is **DENIED**.

Gulfstream's request that the Court compel Flagstar to provide a more definite statement is also **DENIED**. The Court believes that Flagstar's Complaint is neither vague nor ambiguous.

## II.   FACTS

On October 24, 2001, Flagstar, a federally chartered savings bank with its principal place of business in Troy, Michigan, entered into the Broker Agreement with Gulfstream, a Florida corporation with its principal place of business in Stuart, Florida. Flagstar underwrites and funds mortgage loans for residential properties. Gulfstream is the mortgage broker under the Broker Agreement. Under the Broker Agreement, Gulfstream agreed to submit loan packages to Flagstar for consideration, possible approval, and funding of residential mortgages. The Broker Agreement contains an indemnification provision, which states that Gulfstream will indemnify Flagstar for "any and all losses, liabilities, claims, damages, or costs of any nature, including without limitation attorney's fees and costs, and actions suffered or incurred by Flagstar which arise out of, result from, or relate to" Gulfstream's breach of the Broker Agreement.

The Broker Agreement also contains a repurchase clause:

> Seller agrees that upon written request Seller shall immediately repurchase, at the Repurchase Price, any Mortgage Loan sold to Flagstar pursuant to this Agreement for any of the following reasons:
>
> \*\*\*

> (b) Flagstar reveals any evidence of fraud in the origination and closing of the Mortgage Loan by i.) the Seller or its employees, directors, officers, agents and independent contractors (including without limitation sellers or brokers of the Seller); or ii.) the Borrower.
>
> \*\*\*
>
> (d) Seller fails to observe or perform or breaches in any material respect any of the representations, warranties or agreements contained in this Agreement, the Guide, or Agency guidelines with respect to a particular Mortgage Loan.
>
> \*\*\*
>
> (f) Flagstar is required to repurchase said Mortgage Loan from Fannie Mae, Freddie Mac, or any other third party investor for any reason involving the origination or closing of the Mortgage Loan.

Section 7.3 of the Broker Agreement is a forum selection clause:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan. Each of the parties irrevocably submits to personal jurisdiction in the state court located in Oakland County, Michigan or the United States District Court for the Eastern District of Michigan over any action, suit or proceeding to enforce or defend any right under this Agreement or otherwise arising from any transaction existing in connection with this Agreement.

Gulfstream presented Flagstar with a loan package for borrowers Kevin and Saerina Smith in Okeechobee, Florida. Flagstar funded the Smith Mortgage Loan Package ("Smith Loan"). Following the closing of the Smith Loan, Flagstar sold it to the Federal National Mortgage Association ("Fannie Mae"). Fannie Mae ultimately foreclosed the Smith Loan in the amount of $194,830.17. Subsequently, Fannie Mae sent a demand to Flagstar for reimbursement for losses Fannie Mae incurred on the Smith Loan. Fannie Mae demanded reimbursement because the Smith Loan had allegedly numerous deficiencies in its preparation and closing: (1) misrepresentation of the borrower's then existing debt obligations and resulting unacceptable debt-to-income ratio rendering the loan ineligible, and (2) missing documentation within the

mortgage file, including absence of a standard verification of employment, W-2 form and pay stubs. Flagstar did indemnify Fannie Mae and incurred a loss of $107,749.02. Flagstar then demanded indemnification from Gulfstream under the Broker Agreement. Gulfstream refused to pay. Flagstar now seeks indemnification from Gulfstream for losses associated with the Smith Loan.

Flagstar says these losses were due to Gulfstream's breaches, in violation of its contractual obligation to submit mortgage loans to Flagstar "that [were] in full compliance with all pertinent requirements of Fannie Mae..."

Gulfstream contends that the forum selection clause is a permissive consent to jurisdiction and is not mandatory. Gulfstream says that even if the clause in the Broker Agreement were mandatory, the Court should exercise its discretion to transfer the case for the convenience of parties and witnesses and in the interest of justice under § 1404(a).

### III. ANALYSIS

#### A. Standard of Review

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The district court determining a § 1404(a) motion to transfer venue has the "broad discretion to determine when party convenience or the interests of justice make a transfer appropriate." *Reese v. CHN Am.*, 574 F.3d 315, 320 (6th Cir. 2009). See also, *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). The "party moving for transfer for the convenience of the witnesses must demonstrate, through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally

include." *Rinks v. Hocking*, No. 10-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011).

Additionally, "[w]here a valid forum-selection clause was entered into by the parties, it should ordinarily be given controlling weight." *Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F.Supp. 214, 218 (E.D. Mich. 1992); see also *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991), the Sixth Circuit stated that the forum selection clause "is a significant factor that should figure centrally into [a district court's] calculus," but other factors to consider were "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systematic integrity and fairness, which come under the rubric of 'interest of justice'." *Id.* at 1137.

Forum selection clauses have been viewed by a majority of courts as "*prima facie* valid" and are to be enforced "unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Id.* at 1136 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 47 U.S. 1 (1972)). In weighing the reasonableness of the chosen venue and the transferee's request to transfer, the clause "should receive neither dispositive consideration…nor no consideration…but rather the consideration for which Congress provided in § 1404(a)." *Stewart*, 487 U.S. at 2245, Therefore, in addition to the forum selection clause, this Court should consider a number of other pertinent factors.

A court must determine whether (1) "the action could have been brought in the proposed transferee district," (2) "a transfer would promote the interests of justice," and (3) "a transfer would serve the parties' and witnesses' convenience." *IFL Group, Inc. v. World Wide Flight Services, Inc.*, 306 F.Supp.2d 709, 712 (E.D. Mich. 2004). In weighing its determination on the

5

latter two factors, the court may consider the following:

> "(1) the convenience of witnesses; (2) the location of relevant documents and relevant ease to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances."

*Overland, Inc. v. Taylor*, 79 F.Supp.2d 809, 811 (E.D.Mich.2000) (quoting *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F.Supp. 175, 182-83 (S.D.N.Y. 1995)).

**B.     Discussion**

**1.     Whether the Action Could Have Been Brought in the Proposed Transferee District**

It is undisputed that this action could have been brought in the Southern District of Florida. Therefore, the Court only analyzes whether transfer would be for the convenience of the witnesses and parties, and serve the interests of justice.

**2.     Other Relevant Factors to Consider**

**(i)     The Forum Selection Clause**

Gulfstream contends that it did not agree to exclusive jurisdiction and venue when it signed the Broker Agreement. Gulfstream says the clause is permissive, containing no mandatory language. Flagstar disagrees, noting Gulfstream contractually agreed to "irrevocably" submit to jurisdiction and consented to litigate "any action, suit, or proceeding" in this Court. (Pl. Rep. Br. 4).

This is a valid forum selection clause, but is only one factor in the § 1404(a) analysis. The Supreme Court has held that forum selection clauses should be afforded significant weight in the § 1404(a) analysis. *Stewart*, 487 U.S. at 2244. The inclusion of the forum selection clause in the

6

Broker Agreement weighs in favor of Flagstar.

### (ii) The Convenience of the Parties

The strong presumption in favor of the plaintiff's choice of forum can only be overcome when the other factors in the § 1404(a) analysis clearly point towards an alternative forum. *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951) ("Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed."); *IFL Group, Inc. v. World Wide Flight Service Inc.*, 306 F. Supp.2d 709 (E.D. Mich. 2004) (the burden of the moving party includes proving that the relevant factors "strongly favor the forum to which transfer is sought.").

Gulfstream is a Florida corporation, doing business exclusively in Florida. Flagstar is a nationwide company, with offices located in many states. Gulfstream notes that traveling to Michigan to litigate will be costly and time-consuming. Flagstar contends, however, that merely shifting the burden from one party to another is impermissible. *Grand Kensington*, LLC, 81 F.Supp.2d 834, 837 (E.D. Mich. 2000); see also *Evans Tempcon, Inc. v. Index Industries, Inc.*, 778 F. Supp. 371, 377 (W.D. Mich. 1990).

Both parties will equally experience inconvenience, depending on where this case is litigated. Gulfstream has not provided any substantiated evidence to show it would be more inconvenienced than Flagstar, or that litigating in Michigan would be overly burdensome.

Gulfstream does not sustain its burden on this factor.

### (iii) Convenience of the Witnesses

While the convenience of witnesses is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a), *Audi Ag & Volkswagon of Am. Inc. v. D'Amato*, 341 F. Supp. 2d 734 (E.D. Mich. 2004), the convenience of witnesses does not

weigh in favor of transfer. This Court also weighs its determination on the location of the "key witnesses," and less importance is given to less important witnesses. *Crestmark Fin. Corp. v. OMO Sci., Energy, and Tech.*, Inc., 10-CV-11795, 2010 WL 3702371, at *2 (E.D.Mich. Sept.16, 2010). A party seeking to transfer a case should specify the key witnesses and the nature of their testimony. *New World Systems Corp. v. Jones*, 2009 WL 996954, *6 (E.D. Mich. 2009). Gulfstream does not provide enough to show that its key witnesses would be proportionately more inconvenienced than Flagstar's key witnesses.

Both Flagstar and Gulfstream provided a list of potential witnesses. Flagstar provided the names of three Flagstar employees based in southeast Michigan. Flagstar contends that those three employees will provide testimony "to, among other things, the misrepresentations contained in the Smith loan package and the documents missing from that loan package, Fannie Mae's demand for reimbursement of losses associated with the Smith loan, Flagstar's payment to Fannie Mae, and Flagstar's demand for reimbursement from Gulfstream." (Pl.'s Decl. Exhibit 1-2).

Gulfstream lists three Gulfstream employees, the borrowers on the Smith Loan, one former Gulfstream employee, and four other individuals who have connections to the origination of the Smith Loan. Gulfstream says these witnesses will provide information concerning the conduct that led to the alleged breach of contract, that all of its witnesses reside in Florida, and some of them will find it burdensome to travel to Michigan for trial. In response, Flagstar argues that merely shifting the burden from one party to another is insufficient to warrant transfer.

The Court agrees with Flagstar's reasoning, and finds that while both parties will be inconvenienced, the level of inconvenience to Gulfstream and its potential witnesses does not

warrant transfer to Florida.

> (iv)   **The Location of Documents and the Relative Ease of Access to Sources of Proof**

Gulfstream contends that all its proofs are in Florida, including loan documents. Flagstar states that all relevant documents are available in electronic form.

The location of documents and sources of proof have become a less significant factor in the § 1404(a) transfer analysis because of technological advances and availability of documents in electronic form. *Cincinnati Ins. Co. v. O'Leary Paint Co., Inc.*, 676 F. Supp. 2d 623, 635 (W.D. Mich. 2009). Since Gulfstream has not provided substantiated information that certain sources of proof will be inaccessible from Michigan, the Court finds that Gulfstream has not met its burden to prove that the location of documents and sources of proof weigh in favor of transfer to Florida.

> (v)    **The Locus of Operative Facts**

Gulfstream says that all of the underlying conduct that gave rise to the alleged breach of contract took place in Florida, and thus the locus of operative facts rests there.

An action should be tried in the location that is the "center of gravity" of the dispute. *Sloan v. Borgwarner, Inc.*, No. 09-10918, 2009 WL 1689846, at *7 (E.D. Mich. June 17, 2009). Gulfstream is unable to show that the "center of gravity" in this cause of action rests in Florida rather than Michigan.

Gulfstream argues it would be forced to initiate another lawsuit in Florida against other third party defendants and witnesses in order to protect its interests. Gulfstream proposes that third party witnesses or possible third party defendants are located in Florida. Gulfstream names numerous individuals who may be responsible for the alleged breach: the borrowers, the title

company, the mortgage broker, and the appraiser, all of whom could possibly absolve Gulfstream of liability.

While underlying facts of the Smith Loan may signal fraud or misrepresentation by others, Gulfstream entered into a contract with Flagstar with the obligation to present Flagstar with loan packages that met certain requirements, including Fannie Mae mortgage standards. The "center of gravity" is in the Broker Agreement and includes Gulfstream's obligations under it. Gulfstream and its employees allegedly breached that agreement. Those individuals and their actions or inactions are the pertinent factors. Put simply, the alleged breach of contract was triggered when Gulfstream allegedly sent the Smith Loan to Flagstar in Michigan for loan consideration. Conduct that took place in Florida does not establish the dispute's "center of gravity" in Florida, and thus does not weigh in favor of transfer.

Additionally, Gulfstream argues that possible third party defendants and witnesses are located in Florida, all are vital to Gulfstream's defense, and none of them consented to jurisdiction in Michigan. While this may all be true, Flagstar would be inconvenienced if trial were transferred to Florida; merely shifting inconvenience is insufficient to justify transfer.

The locus of operative facts is in Michigan and concerns only the breach of the Broker Agreement.

### (vi) The Availability of Process to Compel Attendance of Witnesses

Gulfstream argues this Court lacks the ability to use its subpoena power to compel potential witnesses who may be uncooperative and unwilling to provide testimony, because all of Gulfstream's potential witnesses live more than 100 miles from this Court.

Federal Rules of Civil Procedures 45(e) allows a court to hold any person in contempt who refuses to obey a subpoena unless "the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii)," which provides that a court must quash or modify a subpoena that requires a nonparty to travel more than 100 miles from where the party resides, works, or regularly transacts business.

Aside from the borrower's testimony, Gulfstream fails to identify any witness who would be unwilling to travel to Michigan to testify. Gulfstream has not met its burden to show that this factor weighs in favor of transfer to the Southern District of Florida.

### (vii) The Relative Means of the Parties

Gulfstream says that travel costs from Florida to Michigan would place a financial burden on the company and its potential witnesses.

While the relative financial strength of the parties is a legitimate consideration, Gulfstream does not provide any supporting documentation for its financial hardship claim. *Thomas v. Home Depot, USA, Inc.*, 131 F.Supp.2d at 938 (E.D. Mich. 2001) (holding when a party fails to substantiate its financial condition with exhibits, the court is in no position to conclude that traveling to another state for trial would pose a hardship): see also, *William Beaumont Hospital v. Medtronic, Inc.*, 2010 WL 2534207, *9 (E.D. Mich. June 18, 2010). (rejecting "bald assertions" that had "virtually no factual basis" to support an argument).

Since Gulfstream did not provide proof beyond conclusions that it would not have the relative means to travel to Michigan for trial, transfer does not weigh in favor of Florida.

### (viii) The Forum's Familiarity with the Governing Law

While Gulfstream concedes that the Broken Agreement is governed by Michigan law, it

11

argues that all the events relating to the alleged breach arise from a Florida real estate transaction.

An action should be tried in the location that is the "center of gravity" of the dispute. *Performance Contracting, Inc. v. DynaSteel Corp.*, 12-10165, 2012 WL 1666394 (E.D. Mich. May 9, 2012).

The Court has determined that to be Michigan, and the forum selection clause makes clear that Michigan law applies.

## IV. Request for a More Definite Statement

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

Federal Rules of Civil Procedure (12)(e) allows a party to request a more definite statement when the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Motions for a more definite statement are generally disfavored, since much opportunity is afforded to both parties under the "notice pleading standards of Rule 8(a)(2) and the opportunity for extensive pretrial discovery." *E.E.O.C. v. FPM Group, Ltd.*, 657 F.Supp,2d 957, 966 (E.D. Tenn. 2009). Motions for a more definite statement should only be granted when the Complaint is "so excessively vague and ambiguous as to be unintelligible and

as to prejudice the defendant seriously in attempting to answer it." Id. (quoting *Kok v. First Unum Life Ins. Co.*, 154 F.Supp.2d 777, 781-82 (S.D.N.Y. 2001)).

### B.   Flagstar's Complaint Satisfies Pleading Standards

Gulfstream argues that Flagstar simply states an alleged loss without providing supporting documentation of the loss. Gulfstream further contends that Flagstar's complaint is "clearly vague as to any potential liability" and "void of any allegations for conduct belonging to Gulfstream." (Def.'s Reply Mot. at 5). The Court disagrees.

Flagstar makes numerous allegations of liability in its Complaint against Gulfstream. It cites to the Broker Agreement Section 5.1(f), which provides a loan "repurchase obligation" by the broker if Flagstar is required to repurchase a mortgage loan from Fannie Mae for any reason involving the origination or closing of the mortgage loan. Flagstar alleges it was required to repurchase a loan from Fannie Mae on which Gulfstream was the broker. The alleged liability is clear from the Complaint.

Flagstar's Complaint sufficiently meets the pleading requirements of Fed. R. Civ. P. 8, and does so in a way that both parties were able to sufficiently argue their positions on the change of venue motion. Additionally, Gulfstream will have the opportunity for discovery, where
additional documentation may become available. The Court finds that Flagstar's Complaint is neither vague nor ambiguous.

## V. Conclusion

Defendant has not met its burden to demonstrate that venue should transfer to the Southern District of Florida.

Defendant's motion to change venue is **DENIED**.

Defendant's request for a more definite statement is **DENIED**.

**IT IS ORDERED**.

      /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: November 13, 2013

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 13, 2013.

S/Linda Vertriest
Deputy Clerk